# U.S. District Court
## Southern District of Florida (Miami)
## CRIMINAL DOCKET FOR CASE #: 1:14−mj−03107−WCT−1
### *Internal Use Only*

Case title: USA v. Bandfield

Other court case number: Cr 14−00476 Eastern District of New York

Date Filed: 09/10/2014

Date Terminated: 09/12/2014

---

Assigned to: Magistrate Judge
William C. Turnoff

**Defendant (1)**

| | | |
|---|---|---|
| **Robert Bandfield** | represented by | **Noticing FPD−MIA** |
| 05625−104 | | Email: MIA_ECF@FD.org |
| *YOB: 1944; ENGLISH* | | *LEAD ATTORNEY* |
| *TERMINATED: 09/12/2014* | | *ATTORNEY TO BE NOTICED* |
| *also known as* | | *Designation: Public Defender Appointment* |
| Bob Bandfield | | |
| *TERMINATED: 09/12/2014* | | |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| Warrant on Indictment (ED/NY) Securities Fraud (Case # CR 14−00476) | |

---

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Cristina M. Moreno** |
| | | U.S. Attorney's Office |

99 NE 4th Street
Miami, FL 33132
305−961−9180
Email: Cristina.Moreno@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/09/2014 | | 3 | Arrest of Robert Bandfield (mdc) (Entered: 09/11/2014) |
| 09/10/2014 | 1 | 4 | Report Commencing Criminal Action as to Robert Bandfield − YOB: **/**/1944 Prisoner #: 05625−104; ENGLISH (mdc) (Entered: 09/11/2014) |
| 09/10/2014 | 2 | 5 | Magistrate Removal of Indictment from Eastern District of New York Case number in the other District CR 14−00476 as to Robert Bandfield. (mdc) (Entered: 09/11/2014) |
| 09/10/2014 | 3 | 27 | Minute Order for proceedings held before Magistrate Judge William C. Turnoff: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Robert Bandfield (1) held on 9/10/2014. AFPD APPOINTED. Bond set to Temporary Pretrial Detention. Status Conference, Report Re: Counsel Hearing and Detention Hearing set for 9/12/2014 10:00 AM in Miami Division before MIA Duty Magistrate. Removal Hearing set for 9/24/2014 10:00 AM in Miami Division before MIA Duty Magistrate. (Digital 14:17:30 / 15:06:06.) Signed by Magistrate Judge William C. Turnoff on 9/10/2014. (mdc) (Entered: 09/11/2014) |
| 09/11/2014 | 4 | 28 | Invocation of Right to Silence and Counsel by Robert Bandfield (O'Connor, Christine) (Entered: 09/11/2014) |
| 09/12/2014 | 5 | 30 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge William C. Turnoff: Status Conference re: Pretrial Detention/Removal as to Robert Bandfield(J) 05625−104 held on 9/12/2014. The Defendant waives Removal Hearing and stipulates to Pretrial Detention. Waiver of Removal filed. Stipulated PTD entered with right to revisit in ED/NY. Commitment Order entered. Defendant Ordered removed in USM custody to ED/NY to answer to pending charges. **APPEARANCES: Duty AUSA Brian Dobbins present on behalf of the Government. AFPD Christy O'Connor present on behalf of the Defendant, who is also present in USM custody. Language: English (Time: 5 mins.)(Digital 10:21:06.) (lw1) (Entered: 09/12/2014) |
| 09/12/2014 | 6 | 31 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Robert Bandfield (lw1) (Entered: 09/12/2014) |
| 09/12/2014 | 7 | 32 | STIPULATED ORDER OF DETENTION as to Robert Bandfield.Signed by Magistrate Judge William C. Turnoff on 9/12/2014. (lw1) (Entered: 09/12/2014) |
| 09/12/2014 | 8 | 33 | COMMITMENT TO ANOTHER DISTRICT as to Robert Bandfield. Defendant |

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Cristina M. Moreno (cristina.moreno@usdoj.gov,
kimberly.mclain@usdoj.gov, usafls-hqdkt@usdoj.gov), Noticing FPD-MIA (mia_ecf@fd.org),
Magistrate Judge William C. Turnoff (turnoff@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:12972828@flsd.uscourts.gov
Subject:Activity in Case 1:14-mj-03107-WCT USA v. Bandfield Arrest
```
Content−Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 9/11/2014 at 10:52 AM EDT and filed on 9/9/2014

| | |
|---|---|
| **Case Name:** | USA v. Bandfield |
| **Case Number:** | 1:14−mj−03107−WCT |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Arrest of Robert Bandfield (mdc)**

**1:14−mj−03107−WCT−1 Notice has been electronically mailed to:**

Noticing FPD−MIA   MIA_ECF@FD.org

Cristina M. Moreno   Cristina.Moreno@usdoj.gov, kimberly.mclain@usdoj.gov,
USAFLS−HQDKT@usdoj.gov

**1:14−mj−03107−WCT−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## REPORT COMMENCING CRIMINAL ACTION

UNITED STATES OF AMERICA          CASE # 14- 3107-Turnoff

VS

Robert Bandfield          PRISONER # 05625-104

*******************************************************************

TO:  CLERK'S OFFICE, UNITED STATES DISTRICT COURT:     (CIRCLE ONE)

(MIAMI)     FT. LAUDERDALE     WEST PALM BEACH     FT. PIERCE
*******************************************************************

*ALL ITEMS ARE TO BE COMPLETED - INFORMATION NOT APPLICABLE OR
UNKNOWN TO BE INDICATED BY "N/A":*

1) DATE AND TIME OF ARREST: 9/9/2014   11:45am

2) LANGUAGE(S) SPOKEN: English

3) OFFENSE (S) CHARGED: Conspiracy to Commit Securities Fraud

4) U.S. CITIZEN     [X] YES     [ ] NO     [ ] UNKNOWN

5) DATE OF BIRTH: 9/7/1944

6) TYPE OF CHARGING DOCUMENT:     (CHECK ONE)
    [X] INDICTMENT
    [ ] COMPLAINT TO BE FILED/ALREADY FILED
    [ ] BENCH WARRANT FOR FAILURE TO APPEAR
    [ ] PROBATION VIOLATION WARRANT
    [ ] PAROLE VIOLATION WARRANT

ORIGINATING DISTRICT: EDNY

COPY OF WARRANT LEFT WITH BOOKING OFFICER [ ] YES     [ ] NO

7) AMOUNT OF BOND:_____     WHO SET BOND:_____

8) ARRESTING/PROCESSING AGENT: Jonathan Walthers     DATE: 9/9/2014

9) AGENCY: FBI          PHONE: 347-752-2839

4

SC:JMK/WMP
F. #2013R00505

**CR 14 - 00476**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ROBERT BANDFIELD,
    also known as "Bob Bandfield,"
ANDREW GODFREY,
KELVIN LEACH,
ROHN KNOWLES,
BRIAN DE WIT,
CEM CAN,
    also known as "Jim Can,"
IPC MANAGEMENT SERVICES, LLC,
IPC CORPORATE SERVICES INC.,
IPC CORPORATE SERVICES LLC,
TITAN INTERNATIONAL SECURITIES INC.,
LEGACY GLOBAL MARKETS S.A. and
UNICORN INTERNATIONAL SECURITIES LLC,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**I N D I C T M E N T**

Cr. No. _____
(T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(1), 1956(h) and 3551 et seq.,
T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

GLASSER, J.

AZRACK, M.J.

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.   Background

    A.   The Corporate Defendants

        1.    The defendant IPC MANAGEMENT SERVICES, LLC was a Nevada

limited liability company with its principal place of business in Belize City, Belize, and a mailing

address in Clackamas, Oregon. The defendant IPC CORPORATE SERVICES INC. was a Belize

1

corporation with its principal place of business in Belize City, Belize, and an office in St. Vincent, West Indies. The defendant IPC CORPORATE SERVICES LLC was a Nevis, West Indies, limited liability company with its principal place of business in Belize City, Belize, and mailing addresses in Clackmas, Oregon, and Nevis, West Indies. IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC. and IPC CORPORATE SERVICES LLC (collectively, "IPC CORP") were offshore management companies that marketed themselves on their website as providing, inter alia, the following services: (a) offshore company formation; (b) nominee services; (c) trust formation; (d) licensed trustee services; (e) full banking services; (f) offshore credit cards; and (g) offshore brokerage (securities) accounts.

2.      The defendant TITAN INTERNATIONAL SECURITIES INC. ("TITAN") was an offshore broker-dealer and investment management company with its principal place of business in Belize City, Belize. TITAN marketed itself on its website as a fully licensed broker-dealer, regulated by the International Financial Services Commission ("IFSC") of Belize, which serviced, inter alia, the Over-the-Counter ("OTC") markets for both corporate and individual clients. TITAN emphasized that it considered client confidentiality paramount and adhered to Belize's strict privacy laws.

3.      The defendant LEGACY GLOBAL MARKETS S.A. ("LEGACY") was an offshore broker-dealer and investment management company with its principal place of business in Panama City, Panama, and an office in Belize City, Belize. LEGACY marketed itself on its website as a fully licensed broker-dealer, regulated by the IFSC of Belize, which provided investors with full access to the major global exchanges worldwide from a single investment account. LEGACY emphasized that its management consisted of seasoned executives who had extensive experience in the offshore financial industry and distinguished backgrounds ranging

2

6

from top-performing financial advisors to experts in banking, public policy, securities law and regulatory compliance.

4.   The defendant UNICORN INTERNATIONAL SECURITIES LLC ("UNICORN") was an offshore broker-dealer and investment management company with its principal place of business in Belize City, Belize. UNICORN marketed itself on its website as a fully licensed broker-dealer, regulated by the IFSC of Belize, which provided investors with full access to the major global exchanges worldwide from a single investment account. UNICORN emphasized that its clients could "trade with confidence" because, inter alia: (a) information about beneficial owners, shareholders, directors and officers is not filed with the Belize government and not available to the public; (b) Belize does not disclose banking and financial information to the United States, or any other foreign government, for any reason, including for cases involving tax-related issues; (c) no government approvals are required for the transfer of dividends, interest and royalties, and for the repatriation of capital; and (d) it provided online brokerage features, including order routing to different market makers and 24-hour access to cash and securities transactions.

B.   The Individual Defendants

5.   The defendant ROBERT BANDFIELD, also known as "Bob Bandfield," a U.S. citizen, founded and controlled IPC CORP. BANDFIELD worked at IPC CORP's office in Belize City, Belize. BANDFIELD also claimed to have created TITAN, LEGACY and UNICORN.

6.   The defendant ANDREW GODFREY, a citizen of Belize, was employed by IPC CORP and worked at IPC CORP's office in Belize City, Belize. GODFREY was the primary contact at IPC CORP for its clients.

3

7.     The defendant KELVIN LEACH, a citizen of the Bahamas, was the President of TITAN. LEACH worked at TITAN's office in Belize City, Belize.

8.     The defendant ROHN KNOWLES, a citizen of the Bahamas, was employed by TITAN as the Head Securities Trader. KNOWLES worked at TITAN's office in Belize City, Belize.

9.     The defendant BRIAN DE WIT, a citizen of Canada, was the President of LEGACY. DE WIT worked at LEGACY's offices in Panama City, Panama.

10.     The defendant CEM CAN, also known as "Jim Can," a citizen of Canada, was the President of UNICORN. CAN worked at UNICORN's office in Belize City, Belize.

II.     Relevant Regulatory Principles and Definitions

11.     The Foreign Account Tax Compliance Act ("FATCA") was a federal law enacted in March 2010 that targeted tax non-compliance by U.S. taxpayers with foreign accounts. FATCA required U.S. persons to report their foreign financial accounts and offshore assets. Additionally, FATCA required foreign financial institutions to report to the Internal Revenue Service ("IRS") certain financial information about accounts held by U.S. taxpayers or foreign entities in which U.S. taxpayers held a substantial ownership interest.

12.     An international business corporation ("IBC") was an offshore, untaxed company, formed under the laws of a foreign jurisdiction, which was not permitted to engage in business within the jurisdiction in which it was incorporated. An owner of an IBC could deposit money and transfer stock to an IBC to facilitate banking and securities trading activities while maintaining a level of anonymity for the IBC's true owner because an IBC's ownership records were typically not publicly available.

4

13.    The term "beneficial owner" was defined under the rules of the U.S. Securities and Exchange Commission ("SEC"). It included any person who directly or indirectly shared voting power or investment power (the power to sell a security). When a person or group of persons acquired beneficial ownership of more than 5% of a voting class of a company's equity securities registered under Section 12 of the Securities Exchange Act of 1934, they were required to file a Schedule 13D with the SEC. Schedule 13D reported the acquisition and other information within ten days after the purchase. The schedule was filed with the SEC and was provided to the company that issued the securities and each exchange on which the security was traded. Any material changes in the facts contained in the schedule required a prompt amendment.

14.    The term "nominee" in the securities fraud context referred to a person or firm into whose name securities or other properties were transferred in order to facilitate transactions, while concealing the customer as the actual owner. A "nominee account" was a type of account in which a stockbroker held shares belonging to clients in the name of a sham entity or another individual. The use of nominees and nominee accounts was designed to conceal the true ownership interest of the customer.

15.    "Microcap" or "penny" stocks referred to stocks of publicly traded U.S. companies which have a low market capitalization. Microcap stocks were often subject to price manipulation because they were thinly traded and subject to less regulatory scrutiny than stocks that traded on notable exchanges. Additionally, large blocks of microcap stock were often controlled by a small group of individuals, which enabled those in the group to control or orchestrate manipulative trading in those stocks.

5

16.     Wash trades were purchases and sales of securities that matched each other in price, volume and time of execution, and involved no change in beneficial ownership. For example, a wash trade took place when Investor A bought 100 shares at $5.00 per share of Company A through Broker A while simultaneously selling 100 shares at $5.00 per share of Company A through Broker B. Match trades were similar to wash trades but involved a related third person or party who placed one side of the trade. For example, a match trade took place when Investor A bought 100 shares at $5.00 per share of Company A through a broker, while Investor B, who coordinated with Investor A, simultaneously sold 100 shares at $5.00 per share of Company A through a broker. Both wash trades and match trades were used to create the appearance that the stock price and volume rose as a result of genuine market demand for the securities.

III.     The Fraudulent Scheme

17.     In or about and between January 2009 and September 2014, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," ANDREW GODFREY, KELVIN LEACH, ROHN KNOWLES, BRIAN DE WIT, CEM CAN, also known as "Jim Can," IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, TITAN INTERNATIONAL SECURITIES INC., LEGACY GLOBAL MARKETS S.A. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, devised and engaged in a scheme whereby they agreed to: (a) defraud investors and potential investors in various U.S. publicly traded companies through, inter alia, fraudulent concealment of their clients' true beneficial ownership interests in the various U.S. publicly traded companies, and the engineering of artificial price movements and trading volume in the stocks of the various U.S. publicly traded companies; (b) defraud the United States by facilitating their clients' efforts

6

to impede, impair, obstruct and defeat the lawful governmental functions of the IRS in the ascertainment, computation, assessment and collection of revenue, specifically federal income taxes under, inter alia, FATCA; and (c) launder money by facilitating for their clients financial transactions to and from the United States, which transactions involved proceeds of fraud in the sale of securities.

18.     In or about and between January 2009 and September 2014, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," ANDREW GODFREY, KELVIN LEACH, ROHN KNOWLES, BRIAN DE WIT, CEM CAN, also known as "Jim Can," IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, TITAN INTERNATIONAL SECURITIES INC., LEGACY GLOBAL MARKETS S.A. and UNICORN INTERNATIONAL SECURITIES LLC created various bank accounts through which passed approximately $500 million connected to the defendants' clients, including more than 100 U.S. citizens and residents.

A.     The Undercover Operation

19.     Beginning in approximately November 2012, a law enforcement agent posing as a stock promoter engaged in fraudulent trading activity (the "Undercover Agent") was directed by John Doe 1, an employee for the now-defunct Bahamas-based broker-dealer Gibraltar Global Securities, Inc. whose identity is known to the Grand Jury, to TITAN and LEGACY. John Doe 1 advised the Undercover Agent that TITAN and LEGACY could establish an IBC for the Undercover Agent to facilitate his stock promotion business, and that same day, sent an email to the Undercover Agent providing him with the contact information for the defendant KELVIN LEACH.

7

20.     In or about January 2013, the Undercover Agent placed consensually-recorded telephone calls to the defendants ANDREW GODFREY and KELVIN LEACH. During these telephone calls, the Undercover Agent explicitly stated that he was a U.S. citizen who was interested in opening an offshore brokerage account with TITAN. The Undercover Agent added that he was a stock promoter who wanted to conceal his ownership of stocks and money transfers in order to avoid scrutiny from the SEC and the IRS. LEACH informed the Undercover Agent that TITAN did not open individual accounts in the name of U.S. citizens but explained that TITAN could open a brokerage account for the Undercover Agent through an IBC that could be created by IPC CORP. Shortly thereafter, GODFREY informed the Undercover Agent that IPC CORP could establish a corporate structure that concealed the Undercover Agent's ownership interest in his brokerage account at TITAN, which would provide the Undercover Agent with the desired protection he sought from the SEC and the IRS. Specifically, GODFREY explained that IPC CORP would establish a limited liability company ("LLC") and an IBC for the Undercover Agent and designate IPC CORP's employees as the beneficial owners, or more appropriately, the nominees. In this fraudulent structure designed to conceal the Undercover Agent's control and ownership, the IBC, which opened the Undercover Agent's brokerage account at TITAN, would be owned by the LLC and the Undercover Agent's name would not be associated with either entity.

21.     In or about October 2013, after the Undercover Agent had paid $3,300 for the IBC and LLC and the brokerage accounts at TITAN and LEGACY established for him by IPC CORP to conceal his true beneficial ownership, the Undercover Agent made consensually-recorded telephone calls to the defendants KELVIN LEACH and BRIAN DE WIT. During these telephone calls, in furtherance of the Undercover Agent's fraudulent scheme to conceal his true

8

beneficial ownership of his brokerage account, LEACH and DE WIT confirmed to the

Undercover Agent that IPC CORP had established brokerage accounts, not in his name, but in the

name of the Undercover Agent's designated IBCs.

22.    On or about November 6, 2013, the Undercover Agent met with the

defendants ROBERT BANDFIELD, also known as "Bob Bandfield," and ANDREW GODFREY

at IPC CORP's office in Belize. The entire meeting was recorded by the Undercover Agent with

a recording device. During this meeting, BANDFIELD and GODFREY explained, in great detail,

how IPC CORP assisted U.S. citizens, like the Undercover Agent, in evading U.S. laws and

regulations, including the IRS's reporting requirements, by establishing sham IBCs and LLCs. To

assure the Undercover Agent of IPC CORP's expertise with managing this fraudulent

arrangement and BANDFIELD's own experience in dealing with clients seeking to manipulate

the markets and effectively transfer money and stock into and out of the United States without

leaving a trail, BANDFIELD revealed that he had created TITAN and LEGACY and had

incorporated more than 5,000 sham companies. BANDFIELD then suggested means by which

the Undercover Agent could circumvent the SEC's reporting requirements by concealing his

beneficial ownership of more than five percent of a public company's stock through nominee

accounts, and the IRS's reporting requirements by having a nominee sign IRS Form W-8BENs for

the Undercover Agent's IBCs and LLCs. Finally, BANDFIELD and GODFREY explained that

IPC CORP would soon offer its clients prepaid MasterCards that allowed for transfers up to

$50,000 per month, adding, "We can make it so it's not attached to you."

23.    That same day, the Undercover Agent also met with the defendant ROHN

KNOWLES in the presence of the defendant ANDREW GODFREY. Consistent with the

defendant ROBERT BANDFIELD's explanation of IPC CORP's fraudulent coordination with

TITAN and LEGACY, KNOWLES acknowledged that TITAN could not open an account for U.S. citizens, like the Undercover Agent, without IPC CORP's IBC and LLC arrangement. When the Undercover Agent explicitly indicated that he wanted to engage in fraudulent market manipulation through wash trades and match trades between two accounts controlled by him, KNOWLES stated that he could orchestrate those trades through close coordination with the defendant BRIAN DE WIT at LEGACY, and stated that "me and Brian do it all the time for other clients."

24.     A few months later, on or about March 4, 2014, the Undercover Agent met again with the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," and ANDREW GODFREY at IPC CORP's office in Belize. This meeting was also recorded by the Undercover Agent with a recording device. During this meeting, BANDFIELD and GODFREY touted, inter alia, IPC CORP's success in establishing fraudulent corporate structures, including six IBCs and two LLCs for the Undercover Agent in order to conceal the Undercover Agent's true beneficial ownership of the brokerage accounts at TITAN, LEGACY, UNICORN and two additional broker-dealers. BANDFIELD explained that this "slick" structure was specifically designed to counter U.S. President Barack Obama's new laws, a reference to FATCA. BANDFIELD and GODFREY advised the Undercover Agent that the designated nominees, who included a security guard and courier, would sign any stock purchase agreements on behalf of the IBCs at the Undercover Agent's direction. As payment for IPC CORP's services, the Undercover Agent paid BANDFIELD and GODFREY $9,600 in cash and was informed that IPC CORP would refund the earlier $3,300 paid via PayPal to erase the paper trail.

25.     Following this meeting, the defendant ANDREW GODFREY escorted the Undercover Agent to UNICORN's office where GODFREY introduced the Undercover Agent to

the defendant CEM CAN, also known as "Jim Can." GODFREY informed the Undercover Agent

that IPC CORP conducted a lot of business with UNICORN and that UNICORN expedited the

opening of accounts for IPC CORP. After the Undercover Agent explicitly revealed his intentions

to manipulate the stock of a publicly traded company, CAN confirmed that IPC CORP's scheme

of establishing sham IBCs and LLCs enabled UNICORN to execute trades for U.S. citizens like

the Undercover Agent. To further conceal its clients' true beneficial ownership and fraudulent

activities, CAN explained that UNICORN provided its clients with unidentifiable debit cards

which could be used by UNICORN's clients to pay "consultants" in stock manipulation schemes.

CAN also advised the Undercover Agent to keep his wire transfers to Belize under $50,000, and

vary the amounts, because a wire transfer of $50,000 and over caused banks to inquire into the

source of funds.

        26.      Following his return from Belize, the Undercover Agent continued

communicating with the defendants ROBERT BANDFIELD, also known as "Bob Bandfield,"

ANDREW GODFREY, KELVIN LEACH, ROHN KNOWLES, BRIAN DE WIT and CEM

CAN, also known as "Jim Can," in furtherance of the Undercover Agent's purported scheme to

conceal his true beneficial ownership, engage in market manipulation of publicly traded

companies, evade reporting requirements and the payment of taxes to the IRS and transfer

proceeds of fraud in the sale of securities to and from the United States. For example, on or about

April 9, 2014, during a consensually-recorded telephone call between LEACH and the

Undercover Agent, LEACH confirmed that any wire transfer requests to TITAN must go through

IPC CORP and that IPC CORP's nominee must execute stock transfers. When the Undercover

Agent explicitly stated that he wanted to orchestrate trading in the stock of a publicly traded

company between LEGACY and TITAN, LEACH responded that TITAN worked well with LEGACY.

B.   The Corrupt U.S. Clients

27.   On or about and between March 21, 2014 and May 22, 2014, law enforcement authorities conducted judicially-authorized wiretaps of two IPC CORP, one TITAN and one LEGACY telephone lines, specifically: 305-671-3493 (IPC), 503-305-3897 (IPC), 305-395-7896 (TIS) and 888-400-5461 (LGM). Additionally, on or about and between May 1, 2014 and May 30, 2014, law enforcement authorities conducted a judicially-authorized wiretap of TITAN telephone line 305-407-8426. As set forth below, these five judicially-authorized wiretaps (collectively, the "IPC-TIS-LGM Wiretaps") and emails obtained through judicially-authorized search warrants further revealed the fraudulent scheme devised and engaged in, as set forth above, by the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," ANDREW GODFREY, KELVIN LEACH, ROHN KNOWLES, BRIAN DE WIT, CEM CAN, also known as "Jim Can," IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, TITAN INTERNATIONAL SECURITIES INC., LEGACY GLOBAL MARKETS S.A. and UNICORN INTERNATIONAL SECURITIES LLC, and how far the scheme extended beyond the arrangement with the Undercover Agent.

28.   The emails from the search warrants revealed that the defendants were engaged in similar fraudulent schemes to the ones exposed by the undercover operation. Specifically, the emails confirmed that the defendants were assisting a number of U.S. citizens and residents (the "Corrupt U.S. Clients") to evade, inter alia, U.S. securities and tax laws by establishing sham IBCs and LLCs in order to conceal their clients' true beneficial ownership of

12

stocks and funds and engage in market manipulation of U.S. public companies. For example, on or about September 6, 2013, the defendant BRIAN DE WIT sent an email to the defendant ANDREW GODFREY requesting that UNICORN waive its account opening fee of $1,000 because "we agreed to open accounts at each others['] firms and we don't charge such a fee . . . ." On or about November 6, 2013, the defendant ROBERT BANDFIELD, also known as "Bob Bandfield," sent an email to Corrupt Client 1, an individual whose identity is known to the Grand Jury, forwarding IRS Form W-8BEN signed by GODFREY as the nominee for the IBC in response to a request received by Corrupt Client 1 from a U.S. transfer agent. On or about December 4, 2013, the defendant KELVIN LEACH sent an email to BANDFIELD informing BANDFIELD that a client requested that $75,000 be wire transferred from a brokerage account to a law firm in the United States. On or about December 16, 2013, the defendant ROHN KNOWLES sent an email to BANDFIELD, copying LEACH, in which he forwarded an email from Corrupt Client 2, an individual whose identity is known to the Grand Jury, requesting six wire transfers totaling $1.9 million for various IBCs.

29. The IPC-TIS-LGM Wiretaps also revealed that the defendants were engaged in similar fraudulent schemes with Corrupt U.S. Clients to the ones exposed by the undercover operation and the emails from the search warrants. For example, on or about March 24, 2014, Corrupt Client 3, an individual whose identity is known to the Grand Jury, called the defendant ANDREW GODFREY, whose name he received from the defendant KELVIN LEACH, to have IPC CORP establish an IBC for him to enable him to trade through TITAN. On or about March 26, 2014, Corrupt Client 4, an individual whose identity is known to the Grand Jury, called GODFREY and stated that his biggest concern was getting his funds wired back into the United States. In response, GODFREY advised Corrupt Client 4 that he/she could use his/her

13

IBC account at UNICORN and UNICORN's unidentifiable debit cards to alleviate this concern and get his funds transferred. On or about March 28, 2014, Corrupt Client 5, an individual whose identity is known to the Grand Jury, called the defendant ROHN KNOWLES to inquire about his trading order and wire transfers to a third party. In response, KNOWLES stated that TITAN could execute third-party wire transfers but reminded Corrupt Client 5 that he needed to send the wire instructions through GODFREY or "whoever the signatory is on the account." On or about May 19, 2014, GODFREY called Corrupt Client 6, an individual whose identity is known to the Grand Jury, and stated that IPC CORP's fraudulent scheme using sham IBC and LLC structures was created to evade the IRS, specifically FATCA. On or about May 29, 2014, LEACH called a representative at Cayman National Bank to confirm three wire transfers, including one wire transfer that was requested in the name of an IBC.

30.     The IPC-TIS-LGM Wiretaps also revealed that the defendants were involved in a conspiracy to manipulate the stock of Cannabis-Rx, Inc., a microcap or penny stock company which traded under the ticker symbol CANA. CANA's purported business plan consisted of expanding its business to cater to the real estate needs of the regulated cannabis industry in states where such business was licensed and permitted. CANA's purported business plan also consisted of purchasing real estate assets and leasing facilities to licensed marijuana growers and dispensary owners for their operations.

31.     Specifically, the defendant BRIAN DE WIT was actively involved in the manipulation of CANA's stock. On or about and between March 27, 2014 and April 16, 2014, DE WIT and Corrupt Client 7, an individual whose identity is known to the Grand Jury, engaged in a series of orchestrated transactions which resulted in CANA's stock price plummeting from $13.77 per share on March 27, 2014 to $0.50 per share on April 16, 2014. On March 28, 2014

14

alone, DE WIT received at least five telephone calls from Corrupt Client 7 with specific instructions to fraudulently orchestrate the trading of CANA's stock. That day, CANA's stock, which had not traded since July 2, 2013, had a trading volume of 189,800 shares and the share price plummeted from the previous day's closing price of $13.77 per share to a closing price of $1.90 per share.

COUNT ONE

(Conspiracy to Commit Securities Fraud)

32.    The allegations contained in paragraphs one through thirty-one are realleged and incorporated as though fully set forth in this paragraph.

33.    In or about and between November 2012 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," ANDREW GODFREY, KELVIN LEACH, ROHN KNOWLES, BRIAN DE WIT, CEM CAN, also known as "Jim Can," IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, TITAN INTERNATIONAL SECURITIES INC., LEGACY GLOBAL MARKETS S.A. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and

15

deceit upon investors and potential investors in various publicly traded companies, in connection

with the purchase and sale of investments in the various publicly traded companies, directly and

indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to

Title 15, United States Code, Sections 78j(b) and 78ff.

34.     In furtherance of the conspiracy and to effect its objects, within the Eastern

District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob

Bandfield," ANDREW GODFREY, KELVIN LEACH, ROHN KNOWLES, BRIAN DE WIT,

CEM CAN, also known as "Jim Can," IPC MANAGEMENT SERVICES, LLC, IPC

CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, TITAN

INTERNATIONAL SECURITIES INC., LEGACY GLOBAL MARKETS S.A. and UNICORN

INTERNATIONAL SECURITIES LLC, together with others, committed and caused to be

committed, among others, the following:

<u>OVERT ACTS</u>

a.     On or about January 24, 2013, during a telephone call between the

Undercover Agent and LEACH, LEACH stated, in part, that the Undercover Agent should contact

IPC CORP to establish an IBC.

b.     On or about January 25, 2013, during a telephone call between the

Undercover Agent and GODFREY, GODFREY stated, in part, that IPC CORP would set up an

LLC and an IBC for the Undercover Agent because the Undercover Agent was an American.

c.     On or about January 25, 2013, GODFREY sent an email to the

Undercover Agent providing wire transfer instructions for IPC CORP and a list of IBCs and LLCs

from which the Undercover Agent could choose his IBCs and LLCs.

16

d.     On or about October 31, 2013, LEACH sent an email to the Undercover Agent confirming receipt of $60,000 from the Undercover Agent via wire transfer to fund the Undercover Agent's IBC brokerage account at TITAN.

e.     During a meeting on or about November 6, 2013 at IPC CORP's office in Belize City, Belize, between BANDFIELD, GODFREY and the Undercover Agent, BANDFIELD explained that IPC CORP could create an IBC and LLC corporate structure for the Undercover Agent.

f.     During a meeting on or about November 6, 2013 at TITAN's office in Belize City, Belize, between KNOWLES and the Undercover Agent, KNOWLES confirmed that TITAN and LEGACY executed wash trades and match trades for clients.

g.     During a meeting on or about March 4, 2014 at UNICORN's office in Belize City, Belize, between CAN, GODFREY and the Undercover Agent, CAN confirmed that IPC CORP's IBC and LLC structure enabled UNICORN to deal with U.S. citizens.

h.     During a telephone call on or about March 31, 2014 between DE WIT and Corrupt Client 7, DE WIT stated, in reference to trading CANA stock, "I thought I could see Kelvin [LEACH] in there too, so maybe he is in there grabbing some, and together we will try to do what we can."

i.     On or about March 31, 2014, KNOWLES confirmed in a telephone call with an unidentified individual that KNOWLES had sold 57,100 shares of CANA stock at $1.476 per share.

j.     During a telephone call on or about April 29, 2014 between BANDFIELD and Corrupt Client 8, an individual whose identity is known to the Grand Jury, BANDFIELD stated, in part, "right now, most of our work is securities, surprisingly enough. We

17

see a lot of IPOs and lot of penny stock, OTC stock, pink sheets and all that. We trade a lot of it through companies we set up. Probably 99 percent of our business or 98 percent right now is this kind of stock."

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Defraud the United States)

35.     The allegations contained in paragraphs one through thirty-one are realleged and incorporated as though fully set forth in this paragraph.

36.     In or about and between November 2012 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," ANDREW GODFREY and CEM CAN, also known as "Jim Can," together with others, did knowingly and willfully conspire to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the Internal Revenue Service ("IRS") in the ascertainment, computation, assessment and collection of revenue, specifically, causing the preparation of fraudulent Forms W-8BEN.

37.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," ANDREW GODFREY and CEM CAN, also known as "Jim Can," together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

a.      During a meeting on or about November 6, 2013 at IPC CORP's office in Belize City, Belize, between BANDFIELD, GODFREY and the Undercover Agent,

18

22

BANDFIELD and GODFREY confirmed that the Undercover Agent would not be subject to the IRS's reporting requirements because IPC CORP's designated nominee would sign the stock purchase agreements and the IRS Form W-8BENs for the Undercover Agent's IBCs and LLCs.

    b.  During a/meeting on or about March 4, 2014 at UNICORN's office in Belize City, Belize, between CAN, GODFREY and the Undercover Agent, CAN advised the Undercover Agent that having a loan agreement with his IBC would allow him to avoid any issues with U.S. tax regulators.

    c.  On or about November 6, 2013, BANDFIELD sent an email to Corrupt Client 1 forwarding an IRS Form W-8BEN signed by GODFREY as the nominee for Corrupt Client 1's IBC.

    (Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT THREE
(Money Laundering Conspiracy)

    38.  The allegations contained in paragraphs one through thirty-one are realleged and incorporated as though fully set forth in this paragraph.

    39.  In or about and between January 2009 and September 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ROBERT BANDFIELD, also known as "Bob Bandfield," ANDREW GODFREY, KELVIN LEACH, ROHN KNOWLES, BRIAN DE WIT, CEM CAN, also known as "Jim Can," IPC MANAGEMENT SERVICES, LLC, IPC CORPORATE SERVICES INC., IPC CORPORATE SERVICES LLC, TITAN INTERNATIONAL SECURITIES INC., LEGACY GLOBAL MARKETS S.A. and UNICORN INTERNATIONAL SECURITIES LLC, together with others, did knowingly and willfully conspire:

19

a.        to conduct financial transactions affecting interstate commerce, specifically the interstate wire transfer of money and securities, which transactions involved property represented by a person at the direction of, and with the approval of, a federal official authorized to investigate violations of Title 18, United States Code, Section 1956, to be the proceeds of specified unlawful activity, specifically, fraud in the sale of securities, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, (i) with the intent to promote the carrying on of such specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(3)(A), (ii) to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(3)(B), and (iii) to avoid a transaction reporting requirement under state and federal law, contrary to Title 18, United States Code, Section 1956(a)(3)(C); and

b.        to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, (i) with the intent to promote the carrying on of specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(2)(A), (ii) to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i), and (iii) to avoid a transaction reporting requirement under state and federal law, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(ii).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

20

## CRIMINAL FORFEITURE ALLEGATION
## FOR COUNT ONE

40.    The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count One, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property, real or personal, which constitutes or is derived from proceeds traceable such offense.

41.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## FOR COUNT THREE

42.    The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Three, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 982(a)(1), of any property, real or personal, involved in such offense, or any property traceable to such property.

43.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

# MINUTE ORDER

Page 9

## Magistrate Judge William C. Turnoff

**Atkins Building Courthouse - 11th Floor**     Date: 09/10/2014  Time: 2:00 p.m.

Defendant: Robert Bandfield     J#: 05625-104   Case #: 14-3107-TURNOFF

AUSA: Cristina Moreno     Attorney: AFPD - Christy O'Connor

Violation: INDICT/E/D/NY/CONSP/TO COMMIT SECURITIES FRAUD

Proceeding: Initial Appearance     CJA Appt: _____

Bond/PTD Held: ☐ Yes ☑ No   Recommended Bond: PTD

Bond Set at: Temp. PTD     Co-signed by: _____

| | |
|---|---|
| ☐ Surrender and/or do not obtain passports/travel docs | Language: English |
| ☐ Report to PTS as directed/or ___ x's a week/month by phone: ___ x's a week/month in person | **Disposition:** |
| ☐ Random urine testing by Pretrial Services ___ Treatment as deemed necessary | ∆ Advised & sworn. AFPD appointed. |
| ☐ Refrain from excessive use of alcohol | Court resets matter |
| ☐ Participate in mental health assessment & treatment | to address whether the |
| ☐ Maintain or seek full-time employment/education | deft. qualifies for |
| ☐ No contact with victims/witnesses, except through counsel | court appointed |
| ☐ No firearms | counsel. |
| ☐ Not to encumber property | |
| ☐ May not visit transportation establishments | |
| ☐ Home Confinement/Electronic Monitoring and/or Curfew ___ pm to ___ am, paid by ___ | |
| ☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment | |
| ☐ Travel extended to: ___ | |
| ☐ Other: ___ | |

**NEXT COURT APPEARANCE**   Date:   Time:   Judge:   Place:

Report RE Counsel: 9/12/14 @ 10:00am (Duty/MIA)
PTD/Bond Hearing: _____
Prelim/Arraign or Removal: 9/24/14 @ 10:00am (Duty/MIA)
Status Conference RE: 9/12/14 @ 10:00am (Duty/MIA)
D.A.R. 14:17:30/ 15:06:06     Time in Court: 10mins.

s/William C. Turnoff     Magistrate Judge

27

CASE NO.:  14-3107-TURNOFF

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ROBERT BANDFIELD,
a/k/a "Bob Bandfield",

        Defendant.

_____/

### DEFENDANT'S INVOCATION OF
### RIGHT TO SILENCE AND COUNSEL

The defendant named above does hereby invoke his or her rights to remain silent and to counsel with respect to any and all questioning or interrogation, regardless of the subject matter, including, but not limited to, matters that may bear on or relate to arrest, searches and seizures, bail, pretrial release or detention, evidence at trial, guilt or innocence, forfeitures, or that may be relevant to sentencing, enhanced punishments, factors applicable under the U. S. Sentencing Guidelines, restitution, immigration status or consequences resulting from arrest or conviction, appeals or other post-trial proceedings.

The defendant requests that the U. S. Attorney ensure that this invocation of rights is honored, by forwarding a copy of it to all law enforcement agents, government officials, or

1

employees associated with the investigation of any matters relating to the defendant. Any

contact with the defendant must be made through the defendant's lawyer, undersigned counsel.


Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER


BY:      s/ Christy O'Connor
         Christy O'Connor
         Assistant Federal Public Defender
         Florida Bar No. A5501358
         150 West Flagler Street, Suite 1700
         Miami, Florida 33130-1556
         Tel:  305-530-7000/Fax:  305-536-4559
         christy_o'connor@fd.org


## CERTIFICATE OF SERVICE

I HEREBY certify that on September 11, 2014, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record or *pro se* parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.


s/ Christy O'Connor
Christy O'Connor


2

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Cristina M. Moreno (cristina.moreno@usdoj.gov,
kimberly.mclain@usdoj.gov, usafls-hqdkt@usdoj.gov), Noticing FPD-MIA (mia_ecf@fd.org),
Magistrate Judge William C. Turnoff (turnoff@flsd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:12978411@flsd.uscourts.gov
Subject:Activity in Case 1:14-mj-03107-WCT USA v. Bandfield Status Conference
```
Content−Type: text/html

### U.S. District Court

### Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 9/12/2014 at 12:57 PM EDT and filed on 9/12/2014

| | |
|---|---|
| **Case Name:** | USA v. Bandfield |
| **Case Number:** | 1:14−mj−03107−WCT |
| **Filer:** | |
| **Document Number:** | 5(No document attached) |

**Docket Text:**
 **PAPERLESS Minute Entry for proceedings held before Magistrate Judge William C. Turnoff: Status Conference re: Pretrial Detention/Removal as to Robert Bandfield(J) 05625−104 held on 9/12/2014. The Defendant waives Removal Hearing and stipulates to Pretrial Detention. Waiver of Removal filed. Stipulated PTD entered with right to revisit in ED/NY. Commitment Order entered. Defendant Ordered removed in USM custody to ED/NY to answer to pending charges. **APPEARANCES: Duty AUSA Brian Dobbins present on behalf of the Government. AFPD Christy O'Connor present on behalf of the Defendant, who is also present in USM custody. Language: English (Time: 5 mins.)(Digital 10:21:06.) (lw1)**


**1:14−mj−03107−WCT−1 Notice has been electronically mailed to:**

Noticing FPD−MIA   MIA_ECF@FD.org

Cristina M. Moreno   Cristina.Moreno@usdoj.gov, kimberly.mclain@usdoj.gov, USAFLS−HQDKT@usdoj.gov

**1:14−mj−03107−WCT−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. __14-3107-Turnoff__

UNITED STATES OF AMERICA,

v.                                    **WAIVER OF REMOVAL HEARING**


Robert Leroy Bandfield

I, __R. Bandfield__ Charged in a proceeding pending in the __Eastern__ District of __New York__ And having been arrested in the Southern district of Florida and taken before __William C. Turnoff__, a United States Magistrate Judge for that district, who informed me of the charge and of my right to retain counsel or request the assignment of counsel if I am unable to retain counsel, and to have a hearing or execute a waiver thereof, do hereby waive a hearing before the aforementioned magistrate and consent to the issuance of a warrant/order for my removal to the __Eastern__ District of __New York__ Where the aforesaid charge is pending against me.

**DONE AND ORDERED** at Miami, Florida this __12__ day of __Sept.__, 20__14__.

_____          X_____
Witness                               **Signature of Defendant**


_____
    **WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 14-3107-TURNOFF

UNITED STATES OF AMERICA,

      Plaintiff,        **STIPULATED ORDER OF DETENTION**

vs.

ROBERT LEROY BANDFIELD,

      Defendant.
_____/

**THIS CAUSE** came before the Court and pursuant to proceedings
held, it is thereupon

    **ORDERED AND ADJUDGED** That the above named Defendant is
hereby Ordered Pretrial Detained pursuant to the **Stipulation** of
the parties.  The Defendant reserves the right to have a
Pretrial Detention Hearing upon his/her request.

    **DONE AND ORDERED** at Miami, Florida this 12TH day of
SEPTEMBER, 2014.

                         _____
                         **WILLIAM C. TURNOFF**
                      **UNITED STATES MAGISTRATE JUDGE**

c:    AUSA
       Defense Counsel
       Pretrial Services
       U.S. Marshal

# United States District Court
## Southern District of Florida
Case No. 14-3107-Turnoff

UNITED STATES OF AMERICA,

v.

Charging District's Case No. CR-14-00476

Robert Bandfield,
(USM# 05625-104)

_____ /

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the Eastern District of New York.

**AFPD was appointed to represent Defendant for proceedings in this District.**

The defendant remains in custody after the initial appearance in the Southern District of Florida.

**IT IS ORDERED** that the United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant. The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled. The clerk of this district must promptly transmit the papers and any bail to the charging district.

**DONE AND ORDERED** at Miami, Florida on 9/12/14.

_____
William C. Turnoff
UNITED STATES MAGISTRATE JUDGE

| RETURN | | |
|---|---|---|
| This commitment was received and executed as follows: | | |
| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
| | | |
| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
| | | |