# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   - v. -

ROBERT BANDFIELD, et al.,

               Defendants.

**14-CR-476 (ILG)**

**AFFIDAVIT OF**
**ANDREW GODFREY**

| | | |
|---|---|---|
| COUNTRY OF BELIZE | ) | |
| | ) ss: | |
| CITY OF BELIZE CITY | ) | |

ANDREW GODFREY, being duly sworn, deposes and says:

1. I am a citizen of Belize and I am over 18 years of age. I write to provide the Court with information in connection with defendant Robert Bandfield's Pre-Trial Motions, specifically his motion to suppress the items taken in the search of IPC Corporate Service's offices in Belize and the evidence seized from Mr. Bandfield and me on the day of his arrest. This affidavit is based upon my own personal knowledge.

2. I am a resident of Belize City, Belize. I have been the Office Manager for IPC Corporate Services, Inc. and its affiliate businesses ("IPC") for over 6 years. During my time with IPC, I worked closely with IPC's Chief Executive officer, Robert Bandfield. Mr. Bandfield is a citizen of the United States. I am also a Justice of the Peace in Belize City.

3. IPC's office was situated on the 4th Floor of The Matalon Building, Suite 404, Belize City, Belize. IPC was engaged in the business of incorporating and managing international business companies ("IBCs") and also provided some trust services. IPC employed between 5 and 10 employees over the years I worked there. As of September 9, 2014, IPC employed 8 people.

4. On September 9, 2014, at around 2:30pm, I was working at my computer in the IPC office when approximately 6 men rushed into the office screaming and yelling that they had a search warrant to seize everything, including documents and equipment.

5. At this time, there were 5 employees present at IPC's offices, including Aaliyah Whittaker, Lellia Senticum, Clodine Anderson, Patrick Gentle, and myself.

6. Most of the men who came to IPC with the warrant were dressed in civilian clothing. I recognized one of the men as a police officer, Sgt. Abban, whom I knew through my work as a Justice of the Peace. He explained to me that the Financial Intelligence Unit "FIU") of Belize and the Belize Government had a warrant to seize all files and equipment in the office.

1

7. Sgt. Abban showed me the warrant. It did not provide for the seizure of everything, but only for the seizure of documents and information in hard copy or electronic form. The warrant further specified that the warrant and the search were in pursuance of a request by the United States under the Mutual Legal Assistance and International Cooperation Act. The warrant authorized the search on September 9, 2014 from the hours of 5:00 a.m. until 8:00 p.m.

8. The people conducting the search placed all the employees present in the front waiting area away from their computers and desks. They immediately proceeded to dismantle our computers. I told them anything that they move and take from this office will have to go through me and will be documented in my presence so that I can see what they're doing. I suggested that they write down the serial numbers for each piece of equipment before they packed them away. While packing up, they told everyone not to touch anything so I watched to see what was being taken out. I do not believe they documented much of what was taken.

9. At no time did the persons conducting the seizure of IPC's office ever conduct a search or inspection of our computers, documents, or other items in the office. They simply seized the entire contents of the office inclusive of all documents, all our computers, scanners, printers, back-up servers from our server room, $3,000.00 in U.S. dollars cash from a cabinet in Mr. Bandfield's office, our petty cash box containing about $33, and even our garbage and garbage bins. I had to give them garbage bags to use as they did not have enough garbage bags and boxes to take everything that they seized.

10. While all of this was happening, we the staff members were not allowed to use our cell phones and not allowed to use the restroom until sometime after 5:00 p.m. Between 6:00 p.m. and 7:00 p.m., I asked the officers if they would release the rest of the employees present because they have children to attend to, and I offered to stay behind until they were finished. The officers let the employees go sometime around 7:00 p.m. The employees are usually finished with work at 4:00 p.m.

11. The packing up and seizure continued until about 9:10 p.m. that night, after the time the warrant specified. After they finished packing the boxes and garbage bags, the officers/persons proceeded to remove the boxes and bags from IPC's office and transported them downstairs. The boxes and bags with all the documents and all the equipment from the office were taken away from the premises.

12. The officers in charge of the seizure that day was Supt. Romero and Ms. Pitts from the FIU. At times, either one or both of them would leave and then return. At one point, Ms. Pitts instructed Supt. Romero to open my food container from my lunch that day to verify that it contained left-over turkey bones, like I told them, rather than documents.

13. So complete and sweeping was the seizure of items from the premises of IPC that only the carpet on the floor, the empty filing cabinets, desks and chairs were left behind. I know that some personal items, pictures, files and equipment owned by employees were also taken. I know that Mr. Bandfield and his wife kept personal files and items in the office, which were taken.

14. IPC ceased to operate after that day. All of the employees lost their jobs and we have all suffered reputational damage.

15. Several legal proceedings have taken place concerning the seizure and a related asset freeze by the FIU of IPC's and other companies' accounts. IPC is one of the claimants that filed a lawsuit for constitutional violations that occurred during the seizure on September 9, 2014.

16. I know from conversations with IPC's attorney and others that the Supreme Court of Belize overturned the asset freeze for IPC and other companies around November 2014 for reasons including insufficient evidence and that it was based solely on the U.S. Government's indictment and mutual legal assistance request. In another lawsuit by Unicorn International Securities (also a defendant in the U.S. case), the Supreme Court of Belize ordered that all the items seized from Unicorn on September 9, 2014 had to be returned by December 19, 2014. We at IPC believe that these two decisions from the Supreme Court of Belize in other matters indicate that we will be successful in our claim for constitutional violations occurring during the seizure.

17. I understand from IPC's attorney that all the items seized from IPC's office on September 9, 2014 were turned over to agents for the United States.

Dated:          Belize City, Belize

                November 27, 2015


                                        _____
                                        Andrew Godfrey


Subscribed and sworn by ANDREW GODFREY
at Belize City, BELIZE
on the 27th day of November 2015



Before me,


_____
Cynthia Pitts

4818-7973-7899, v. 1

1